1  VILLARREAL HUTNER PC
   LARA VILLARREAL HUTNER, ESQ., Cal. Bar No. 178639
2  E-Mail: lhutner@vhattorneys.com
   One Market Street, 35th Floor
3  San Francisco, California  94105
   Telephone: 415.543.4200
4  Facsimile: 415.449.6897

5  Attorneys for Defendants
   SVC-WEST, L.P., SHELL VACATIONS
6  CM CORP., formerly known as SHELL
   DEVELOPMENT CORP-SAN FRANCISCO
7  and John Carter

8  HUBER LAW FIRM
   BETH A. HUBER, ESQ., Cal. Bar No. 184702
9  E-Mail: bethubca@aol.com
   1104 Lincoln Avenue
10 San Rafael, California  94901
   Telephone: 415.456.4411
11 Facsimile: 415.456.3811

12 Attorney for Plaintiff
   JAMES GUERIN

13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                    OAKLAND DIVISION

17 | JAMES GUERIN, an individual,           | CASE NO. C 07-03153 CW |
   |                                         |                        |
18 |               Plaintiff,                | **JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER** |
   |                                         |                        |
19 |        v.                               | Trial Date:        None set. |
   |                                         |                        |
20 | SHELL VACATIONS CLUB, LLC d/b/a         |                        |
   | SVC-WEST L.P. d/b/a SHELL VACATIONS     |                        |
21 | CM CORP d/b/a SHELL DEVELOPMENT         |                        |
   | CORP-SAN FRANCISCO and JOHN             |                        |
22 | CARTER, an individual,                  |                        |
   |                                         |                        |
23 |               Defendants.               |                        |

24

25         Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 16-9,

26 and the Case Management Scheduling Order, the parties to the above-entitled action jointly submit

27 this Case Management Statement and Proposed Order and request the Court to adopt it as the Case

28 Management Order in this case.

1    **I.    JURISDICTION AND SERVICE:**

2        The jurisdiction of this Court is based upon the existence of a federal question and arises

3    under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213 ("ADA").  Jurisdiction is

4    conferred on this Court by 42 U.S.C. § 12117 which provides Plaintiff the powers, remedies and

5    procedures set forth in Title VII, § 2000e-5(f)(3).  Supplemental jurisdiction over the claims

6    arising under California state law exists pursuant to 28 U.S.C. § 1367(a).

7        Neither Plaintiff nor Defendants currently contend any issues with respect to personal

8    jurisdiction or venue exist.  All Defendants have been served.  The corporate Defendants,

9    (collectively "Shell") in their Answer, provided clarification regarding which entities employed

10   Plaintiff.  Plaintiff will amend his complaint accordingly.

11   **II.    STATEMENT OF FACTS**

12       **Plaintiff's Statement:**  Plaintiff James Guerin ("Guerin" or "Plaintiff") contends that

13   Defendant discriminated and harassed him because of his disability, alcoholism, and his sexual

14   orientation.  He also contends that Defendants did not reasonably accommodate his disability,

15   constructively terminated his employment and caused him emotional distress.

16       Prior to his re-employment with Defendant Shell Vacations in approximately June 2003,

17   Guerin was a sober, recovering alcoholic for eight years.  He was also gay.

18       In 2003, Defendants hired Guerin as their OPC-Concierge PM Supervisor and he moved

19   from Hawaii to California.  In September 2003 he was promoted after his manager, Scott Hall,

20   was terminated.  In December 2005, he was promoted to the Director of Marketing position for

21   Defendant Shell Vacation's Napa Project in Napa, California   For the next four to five months,

22   Guerin worked both in Napa and San Francisco.   At all times Guerin contends his performance

23   was exemplary.

24       Beginning in January 2006 Carter's attitude, behavior and treatment of Guerin became

25   derogatory. discriminatory and harassing. From approximately early 2006 through April 2006,

26   Carter would at least once to twice a week prolifically rant and rave at Guerin, whether in person

27   or via telephone, often using the "f" word.  The tirades could last anywhere from a few minutes to

28   over an hour.  They left Guerin feeling distressed, degraded, humiliated and despondent.  During

1    this same time period Guerin would travel to San Francisco to meet with Carter only to find that

2    Carter was unavailable because he was intoxicated and wasted from consuming drugs or alcohol.

3    Given the pending opening of the new project, Carter's unavailability severely interfered with

4    Guerin's ability to proceed and required that Guerin exercise independent decision making.

5         Guerin began experiencing adverse physical side-effects as the result of Carter's

6    aggressive and violent temper.  His blood pressure increased to a dangerously high level and

7    Guerin had moderate to severe chest pains between two to five times per day.  He sought the

8    advice of a physician.

9         Beginning in May 2006 Carter's tantrums and tirades intensified and occurred almost daily

10   if not several times during the same day.   Carter commonly would tell Guerin that he liked him

11   better when he drank or didn't like him since he was sober.  After Carter had learned in a previous

12   civil lawsuit that Guerin was gay, Carter would call someone he did not like a cock-sucker and

13   when doing so, would look specifically at Guerin.

14        In response, Guerin repeatedly told Carter that he needed time off from work or he would

15   start drinking again and concerns for his physical health increased.  Guerin also told Carter about

16   his elevated blood pressure, chest pains and fear of having a stroke or heart attack.  Carter denied

17   Guerin's requests for time off and increased the tirades against Guerin, again using the "f" word

18   and stating that he didn't care if Guerin died on the job.  Guerin's co-workers also asked Carter for

19   time off for Guerin which Carter denied.

20        On June 21, 2006 Guerin resigned after an hour-long tirade by Carter.

21        **Defendants' Statement:**

22        Plaintiff, James Guerin ("Plaintiff") was hired by Shell on June 27, 2003 as Shell's OPC-

23   Concierge PM Supervisor.  Plaintiff was recruited to work for Shell by Scott Hall, a former

24   Shell employee, and John Carter, with whom he previously had worked.  Plaintiff initially

25   reported to his roommate, Scott Hall, until September 2003, when he replaced Mr. Hall as In-

26   House Concierge Manager and began reporting directly to Mr. Carter.   Mr. Carter then

27   promoted Plaintiff to the Napa Director of Marketing position effective January 15, 2006.

28   Plaintiff's performance declined while he was in the position of Napa Director of Marketing.

Defendants deny that Mr. Carter's treatment towards Plaintiff worsened during January of 2006, or that it was negative or derogatory at any time.  Rather, from January 2006-June 2006, Mr. Carter worked with Plaintiff to help him succeed in his new position.  Plaintiff never complained about his health nor requested time off.  Plaintiff resigned his position as Napa Director of Marketing on June 21, 2006.

**Disputed Facts:**

1.  Whether Plaintiff has suffered any harm or was damaged in any way as a result of any unlawful conduct by Defendants, including but not limited to emotional harm or financial harm, including the amounts thereof.

2.  Whether Plaintiff requested leave for medical reasons.

3.  Whether Plaintiff's co-workers requested time off for Plaintiff for medical reasons.

4.  Whether Plaintiff performed his Napa Director of Marketing position satisfactorily.

5.  Whether Shell implemented and maintained policies prohibiting discrimination, harassment, and retaliation.

6.  Whether Shell took reasonable steps to prevent and correct discrimination, harassment, and retaliation.

III.  LEGAL ISSUES

1.  Whether Defendants, either intentionally or negligently, caused Plaintiff emotional distress.

2.  Whether or not Plaintiff was disabled under the respective federal and state statutes.

3.  If Plaintiff was disabled, whether Defendant discriminated against him on the basis of that disability.

4.  Whether or not Defendants failed to reasonably accommodate Plaintiff's disability.

5.      Whether Plaintiff was harassed based on his sexual orientation.

6.      Whether or not Defendants constructively terminated Plaintiff's employment.

7.      Whether or not any of Defendants' actions were done intentionally to harm Plaintiff.

8.      Whether or not Plaintiff's Complaint states facts sufficient to state a claim on which relief may be granted as to each of his individual causes of action.

9.      Whether Plaintiff can show injuries sufficient to support a claim for emotional distress damages.

10.     Whether Plaintiff can show conduct by Defendants sufficiently malicious and oppressive to support a claim for compensatory and punitive damages.

11.     Whether Plaintiff can show that Mr. Carter or other Shell employees were managerial agents for purposes of asserting a claim for punitive damages.

12.     Whether and which Defendant(s) are liable to Plaintiff for any of the conduct alleged by him .

13.     Whether the alleged harassment of which Plaintiff complains was severe and pervasive enough to have adversely altered his working environment.

14.     Whether the factual allegations of Plaintiff's complaint are supported by competent evidence.

15.     Whether Plaintiff exhausted his administrative remedies.

16.     Whether Plaintiff properly and sufficiently mitigated his alleged damages.

**IV.    MOTIONS:**

Plaintiff anticipates the filing of discovery motions to compel based upon Defendants' assertions of privacy and confidentiality in this matter.  Defendants anticipate filing a motion for summary judgment, or alternatively, summary adjudication.  In addition, if necessitated by Plaintiff's responses, Defendants will file motions to compel Plaintiff's answers to discovery.

Both parties anticipate filing pre-trial motions including, but not limited to, motions in limine.

## V.    AMENDMENT OF PLEADINGS:

Plaintiff intends to amend his complaint one time within 60 days of the initial case management conference to set forth the correctly named Defendants as identified in Defendants' answer and, possibly to timely assert new cause(s) of action.  If Plaintiff amends his complaint, Defendants will file amended Answers.

## VI.    EVIDENCE PRESERVATION:

Plaintiff certifies that he has limited documents relevant to the issues in this matter but has taken and will continue to take all reasonable steps to preserve and produce them in his initial disclosure to Defendant.  Defendants certify that they have taken all reasonable steps to preserve evidence relevant to the issues reasonably evident in this action.

## VII.    DISCLOSURES:

The parties certify that initial disclosures will be exchanged in this matter on or prior to September 18, 2007.

## VIII.    DISCOVERY:

To date, no party has conducted any discovery other than initial disclosures as set forth immediately above.  Further, the parties respectively request the following discovery plan:

a.    Non-Expert Depositions:  Up to 10 per side.

b.    Special Interrogatories:  Plaintiff and Defendant do not agree regarding the number of special interrogatories each side may propound.  Plaintiff requests that he be allowed to propound 50 special interrogatories to each Defendant (100 in total).  Defendants request that Plaintiff only be allowed to propound 25 special interrogatories to each Defendant (50 in total).  Plaintiff and Defendants agree that Defendants should each be allowed to propound 25 special interrogatories to Plaintiff (for a total of 50 special interrogatories).

c.    Documents Requests:  No limit.

d.    Requests for Admission:  Plaintiff should be allowed to propound 35 requests for admission to each Defendant (for a total of 70 requests for admission to both Defendants) and

1  Defendants should each be allowed to propound 35 requests for admission to Plaintiff (for a total

2  of 70 from both Defendants to Plaintiff).

3  **IX.    CLASS ACTIONS:**

4      Not applicable.

5  **X.    RELATED CASES:**

6      Both parties certify that, at the time this Case Management Statement is filed,  there are no

7  related cases or proceedings before another judge of this court, or before another court or

8  administrative body.

9  **XI.    RELIEF:**

10      Plaintiff seeks the following relief in this matter:

11      1.    Lost income and benefits of at least $150,000 based upon his final contract.

12  Though Plaintiff diligently attempted to mitigate his damages, he only recently found similar

13  employment, though at a lower earnings rate than when he was employed by Defendant.  Based

14  upon his lower earnings, his financial damages continue to accrue.  The calculation of his lost

15  income and benefits will be based on his earnings and benefits while employed with Defendant,

16  potential earnings once the Napa Hotel opened and present earnings and benefits.

17      2.    Plaintiff also seeks damages for emotional distress.  He estimates his emotional

18  distress to equal three times, if not more, his lost income and benefits given his distress was and

19  continues to be substantial in nature.  It manifested itself emotionally and physically, causing

20  Plaintiff high blood pressure and chest pains while employed and the desire to start drinking again.

21  Plaintiff was hospitalized on an emergency basis based on Defendants' actions.  Carter degraded

22  and destroyed Mr. Guerin's self-esteem and confidence so completely that for several months

23  Guerin suffered from depression.  At times Plaintiff is still depressed

24      3.    Plaintiff has and continues to incur attorneys' fees and costs in amounts yet to be

25  determined.

26      4.    Plaintiff also seeks punitive damages given Defendants' conduct was malicious,

27  extreme and outrageous and given the fact that Defendant Shell Vacations knew of, yet tolerated

28  Carter's and other employees' on-going abuse of drugs and alcohol in the workplace.  Shell

1  Vacations was notified in the Cicero and Hall matters of these abuses.  Plaintiff will request

2  punitive damages based on a multiplier of at least three times, if not more, his financial and

3  emotional distress damages.

4       Defendants deny that Plaintiff was damaged or injured at all, or that they engaged in any

5  unlawful or inappropriate conduct; therefore, Plaintiff is entitled to no relief in this matter.  In

6  addition, Defendants will seek reasonable attorneys' fees and costs if they are the prevailing party.

7  **XII.  SETTLEMENT AND ADR:**

8       The parties briefly engaged in settlement discussions immediately following the filing

9  of the Complaint; however, they were not fruitful.  Given Plaintiff's demand, the parties were

10  unable to agree on an ADR process as required by Local Rule 3-5; therefore, per their filing on

11  August 28, 2007, the parties requested an ADR Phone Conference to decide on an ADR

12  process.

13       Given Plaintiff's demand, the parties are not in a position to negotiate a resolution.

14  **XIII.  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES:**

15       Plaintiff consented to proceed before a Magistrate Judge; however, Defendants declined.

16  **XIV.  OTHER REFERENCES:**

17       The case is not suitable for reference to binding arbitration, a special master, or the

18  Judicial Panel on Multidistrict Litigation.

19  **XV.  NARROWING OF ISSUES:**

20       Defendants anticipate requesting the court bifurcate the liability and damages phases of

21  the trial.  At this time, the parties are unable to narrow the issues by agreement or by motion.

22  **XVI.  EXPEDITED SCHEDULE:**

23       Neither party believes this case can be handled on an expedited basis.

24  **XVII.  SCHEDULING:**

25       a.    Deadline for fact discovery (excluding expert witness discovery):

26             Plaintiff:  45 days prior to trial.

27             Defendant:  Friday July 18, 2008.

28       b.    Designation of expert witnesses:

1    90 days before trial.

2    c.    Last day for dispositive motions to be heard:

3    October 16, 2008 at 2:00 (8 weeks before trial.)

4    d.    Pretrial conference date:

5    November 25, 2008 at 2:00 p.m. (2 weeks before trial.)

6    e.    Trial date:

7    December 8, 2008.

8    **XVIII.  TRIAL:**

9    Plaintiff has requested a trial by jury.  At present Plaintiff anticipates the trial will last

10   for approximately 10 days.  Defendants anticipate the trial will last at least 10 days, and

11   potentially 12.

12   **XIX.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS:**

13   Both parties will have filed their respective Certification of Interested Entities or

14   Persons.

15   Pursuant to Civil L.R. 3-16, the undersigned certifies that following listed persons,

16   associations of persons, firms, partnerships, corporations (including parent corporations) or

17   other entities (i) have a financial interest in the subject matter in controversy or in a party to the

18   proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be

19   substantially affected by the outcome of this proceeding:

20   Plaintiff:  None

21   Defendants:  1.  Shell Holdings, Inc., a Delaware Corporation – General Partner to

22   Defendant SVC-WEST, L.P. and Parent Corporation to SHELL VACATIONS CM CORP.;

23   2.  Shell Vacations LLC, an Arizona Limited Liability Corporation –

24   Limited Partner in Defendant SVC-WEST, L.P., which owns 100% of Shell Holdings, Inc.;

25   and,

26   3.  Travelers Bond & Financial Products – Insurance Carrier.

27

28

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER

1  **XX.    MISCELLANEOUS ISSUES:**

2        None at this time.

3
   Dated:  September  18, 2007            VILLARREAL HUTNER PC
4

5

6                                        By    _/s/ LARA VILLARREAL HUTNER_
                                                LARA VILLARREAL HUTNER, ESQ.
7
                                              Attorneys for Defendants
8                                      SVC-WEST, L.P., and SHELL VACATIONS
                                         CM CORP., formerly known as SHELL
9                                      DEVELOPMENT CORP-SAN FRANCISCO,
                                              and JOHN CARTER
10

11

12
   Dated:  September  18, 2007            HUBER LAW FIRM
13

14

15                                       By    _____
                                                    BETH A. HUBER, ESQ.
16
                                           Attorney for Plaintiff JAMES GUERIN
17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER

1

## **CASE MANAGEMENT ORDER**

2

The Case Management Statement and Proposed Order is hereby adopted by the Court as

3

the Case Management Order for the case and the parties are ordered to comply with this Order.

4

In addition, the Court orders:

5

6

_____

7

_____

8

_____

9

_____

10

11

DATED: _____

12

The Honorable Claudia Wilken
United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C 07-03153 EMC
JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER



7

8

Attorneys for Defendants
SVC-WEST, L.P., and SHELL VACATIONS
CM CORP., formerly known as SHELL
DEVELOPMENT CORP-SAN FRANCISCO,
and JOHN CARTER

9

10

11

12  Dated: September 18, 2007               HUBER LAW FIRM

13

14

15                                         By _____
                                               BETH A. HUBER, ESQ.

16                                         Attorney for Plaintiff JAMES GUERIN

17

18

19

20

21

22

23

24

25

26

27

28

                                     10