BETH A. HUBER (SBN 184702)
HUBER LAW FIRM
1104 Lincoln Ave.
San Rafael, CA  94901
Telephone:  (415) 456-4411
Facsimile:  (415) 456-3811
Email:  BetHubCa@aol.com

Attorney for Plaintiff
JAMES GUERIN

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

JAMES GUERIN, an individual,

                Plaintiff,

v.

SVC-WEST, L.P., SHELL VACATIONS CM
CORP formerly known as SHELL
DEVELOPMENT CORP – SAN FRANCISCO
and JOHN CARTER, an individual

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  C 07 -03153 CW

**FIRST AMENDED COMPLAINT FOR
DAMAGES FOR EMPLOYMENT
DISCRIMINATION AND HARASSMENT
IN VIOLATION OF THE AMERICANS
WITH DISABILITIES ACT; DISABILITY
DISCRIMINATION  IN VIOLATION OF
THE CALIFORNIA FAIR
EMPLOYMENT AND HOUSING ACT;
HARASSMENT IN VIOLATION OF THE
FEHA;  FAILURE TO REASONABLY
ACCOMMODATE DISABILITY UNDER
FEHA AND ADA; HARASSMENT BASED
ON SEXUAL ORIENTATION IN
VIOLATION OF FEHA; VIOLATION OF
FAMILY AND MEDICAL LEAVE ACT;
VIOLATION OF CAL FAMILY RIGHTS
ACT; WRONGFUL CONSTRUCTIVE
TERMINATION, IN VIOLATION OF
PUBLIC POLICY; INTENTIONAL
INFLICTION OF EMOTIONAL
DISTRESS; NEGLIGENT INFLICTION
OF EMOTIONAL DISTRESS**

---

**DEMAND FOR JURY TRIAL**

**(Americans with Disabilities Act, 42 U.S.C.
§ 12101 et seq.; Title VII of Civil Rights Act
of 1964, as appended, 42 U.S.C. § 2000e-
2000e-17; Fair Employment and Housing
Act, California Government Code §§
12900(a)-12996; Federal Family and
Medical Leave Act,  29 U.S.C. §§ 2601-2636;
California Government Code § 12945.2**

1

**JURISDICTION**

1.      The jurisdiction of this Court is based upon the existence of a federal question and arises under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213 ("ADA").  Jurisdiction is conferred on this Court by 42 U.S.C. § 12117 which provides Plaintiff the powers, remedies and procedures set forth in Title VII, § 2000e-5(f)(3).  Supplemental jurisdiction over the claims arising under California state law exists pursuant to 28 U.S.C. § 1367(a).

**INTRADISTRICT ASSIGNMENT**

2.      Venue is proper in this District pursuant to Title VII, § 2000e-5(f)(3) because the unlawful acts and practices alleged herein occurred in the Cities of Napa and San Francisco, Counties of Napa and San Francisco, California, which are situated in this judicial district.

3.      At all material times, Plaintiff James Guerin ("GUERIN"), was a resident of the State of California, County of San Francisco or County of Napa.  The employment relationship upon which he sues herein was made in and to be performed in the Cities of San Francisco and Napa, Counties of San Francisco and Napa, State of California.   At all material times, GUERIN worked for Defendant(s) SVC-WEST, L.P. and SHELL VACATIONS CM CORP  formerly known as Shell Development Corp – San Francisco and Shell Vacations Club, LLC ("SHELL VACATIONS" or "DEFENDANT").  The address where GUERIN last worked for Defendant SHELL VACATIONS was 865 Bordeaux Way, Napa, CA 94558.  GUERIN is informed and believes that Defendant JOHN CARTER ("CARTER"), an individual, was Defendant's Regional Director of Marketing and GUERIN'S manager.  At all times GUERIN believes that CARTER was taking the actions alleged herein based upon the managerial relationship between CARTER and GUERIN with CARTER'S harassment of GUERIN falling outside the normal expectations of the employee and employer relationship.  (Together, hereinafter Defendant SHELL VACATIONS and Defendant CARTER will be collectively known as "DEFENDANTS").

4.      GUERIN is informed and believes and thereon alleges that Defendant SHELL VACATIONS is, and at all times herein mentioned, was, a corporation with its principal place of business in Illinois and was licensed to, and did do, business in San Francisco and Napa Counties,

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

California.  GUERIN is informed and believes that CARTER at all times herein mentioned also did business in the Counties of San Francisco and Napa, State of California.

5.    Defendant entered into an employment relationship with GUERIN beginning in approximately June 2003 when GUERIN was hired by Defendant SHELL VACATIONS.  The injuries on which this action is based arise out of the aforementioned employment relationship.

6.    In early March 2007, GUERIN filed complaints of discrimination, harassment, failure to reasonably accommodate a disability, wrongful constructive termination based on disability and sexual orientation with the Equal Employment Opportunity Commission ("EEOC") and California Department of Fair Employment and Housing ("DFEH").  His complaints also included allegations that Defendants did not allow him to take the necessary time off under both the Federal Family and Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA").  GUERIN filed similar complaints against CARTER.

7.    The EEOC issued GUERIN a right-to-sue notice on March 16, 2007 which was received on or about March 18, 2007.  The notice gave GUERIN 90 days in which to bring a federal action.  By doing the foregoing, GUERIN has exhausted his administrative remedies and conferred the jurisdiction of this court.

8.    The DFEH issued GUERIN right-to-sue letters on March 15, 2007, giving him one year from that date to bring a civil action against DEFENDANTS in State court under the provisions of the Fair Employment and Housing Act ("FEHA") and CFRA, California Government Code §§12900(a)-12996.  By doing the foregoing, GUERIN has further exhausted his administrative remedies and conferred the jurisdiction of this court.

**FACTUAL BACKGROUND**

9.    GUERIN was hired by Defendant SHELL VACATIONS in approximately June 2003. He had previously worked with CARTER and Scott Hall ("Hall") who together recruited him in 2003 to work for Defendant SHELL VACATIONS in San Francisco.  He accepted employment with Defendant SHELL VACATIONS as its OPC-Concierge PM Supervisor and moved from Hawaii to California for the position.

3

10.    GUERIN is a Caucasian male who is a recovering alcoholic and has been for approximately the last eight years.  As such, his condition is considered to be a disability and is protected under both the ADA and the California Fair Employment and Housing Act ("FEHA"). GUERIN is also a gay male, thus protected based upon his sexual orientation under the FEHA.

11.    At the time GUERIN began his employment with SHELL VACATIONS, GUERIN was sober and a recovering alcoholic.  In contrast, CARTER was an active drinker and drug user and continued to abuse both through-out GUERIN'S employment.  CARTER'S abuse resulted in his missing several days of work and being unavailable because he was either inebriated or under the influence of the drugs.  Employees and managers at SHELL VACATIONS pervasively used alcohol and illegal drugs whether on the job, at company functions, employee gatherings or after hours.  Defendant SHELL VACATIONS knew of, ignored or participated in and thus, ratified said employees' and managers' use of alcohol and illegal substances in the workplace.

12.    GUERIN reported to Hall until Hall was terminated in approximately September 2003.  During this timeframe GUERIN'S performance was exemplary.  GUERIN replaced Hall when Hall was terminated as DEFENDANT'S In-House Concierge Manager managing five hotel properties in the San Francisco area.  GUERIN then reported directly to CARTER.  While in this position, GUERIN increased the profitability of each concierge marketing program in each of the five hotels and decreased each program's respective expenses.  He consistently received excellent feedback on his performance and regularly made his commissions.  CARTER rewarded GUERIN by promoting him to the Director of Marketing position for Defendant SHELL VACATIONS' Napa Project in Napa, California in approximately mid December 2005, finalizing the appointment in approximately January 2006 and increasing his potential compensation.

13.    Defendant's Napa Project sales room opened as scheduled on May 12, 2006. Between December 2005 and April 2006, GUERIN commuted between San Francisco and Napa and worked as the Director of Marketing in Napa while assisting his replacement in San Francisco, routinely working extensively long hours.  At the same time the opening of the Napa Project Hotel itself was delayed because of rain which interfered with the construction of the hotel.  GUERIN was not responsible for the construction of the hotel.  This delay, however,

4

resulted in lost in-house tours in the sales room between May and July 2006 and in turn, lost revenues.  To compensate, GUERIN found alternative marketing sources.

14.     Beginning in January 2006 CARTER'S attitude, behavior and treatment of GUERIN began to escalate and became unprofessional, derogatory and harassing.  CARTER would become cruel, curt and harsh often using the "f" word and degrade GUERIN for his work despite the fact that CARTER should have appointed someone, whether GUERIN or otherwise, to the Director of Marketing position for the Napa project at least one year prior to the opening to ensure its success.

15.     From approximately early 2006 through April 2006, CARTER would at least once to twice a week prolifically rant and rave at GUERIN for some unsubstantiated performance deficiency which either was not within GUERIN'S realm of control or responsibility and despite GUERIN'S working extensive hours, not taking time off and working as expeditiously as possible to ensure that the project opened in May as scheduled.  CARTER'S tirades occurred both in person and via telephone and could last anywhere from a few minutes to over an hour.  They left GUERIN feeling distressed, degraded, humiliated and despondent.  During this same time period GUERIN would travel to San Francisco to meet with CARTER only to find that CARTER was unavailable because he was intoxicated and wasted from consuming drugs or alcohol.  Given the pending opening of the new project, CARTER'S unavailability severely interfered with GUERIN'S ability to proceed and required that GUERIN exercise independent decision making.  CARTER'S tirades were sometimes witnessed by other employees including Defendant SHELL VACATION'S human resources representative, Melanie Ignacio ("Ignacio"), whose office was across the hall from CARTER'S office, and so, on information and belief, heard CARTER'S tirades through the office walls yet took no corrective action towards CARTER.

16.     During this same time period, GUERIN began experiencing physical side-effects as the result of CARTER'S aggressive and violent temper and resulting harassment and discrimination in the workplace.  His blood pressure increased to a dangerously high level and between two to five times per day GUERIN  would  have chest pains that ranged from moderate to severe.  GUERIN sought the advice of a physician who counseled him to leave his employment

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

with Defendant SHELL VACATIONS.  GUERIN discussed CARTER'S illicit drug and alcohol use and harassment and discrimination of GUERIN with his physician.  GUERIN'S physician acknowledged that other people had complained about CARTER'S drug and alcohol abuse.

17.    Beginning in May 2006 CARTER'S tantrums and tirades occurred almost daily if not several times during the same day.  His tirades increased in ferocity and length as the opening of the Napa Project grew nearer in time.

18.    CARTER'S tirades towards GUERIN were laced with swear words, the "f" word and degrading comments of GUERIN'S incompetence and inabilities.  CARTER commonly would tell GUERIN that he liked him better when he drank or didn't like him since he was sober. After CARTER had learned in a previous civil lawsuit that GUERIN was gay, CARTER would call someone he did not like a "cock-sucker" and when doing so, would look specifically at GUERIN.

19.     GUERIN could no longer tolerate the abusive, demeaning, harassing and hostile work environment because it was severely affecting his health and disability.  GUERIN repeatedly told CARTER that he needed time off from work or he would start drinking again.  His chest pains and blood pressure became alarmingly high to the point that GUERIN was concerned for his life. GUERIN also told CARTER about his elevated blood pressure, chest pains and fear of having a stroke or heart attack.  CARTER responded to GUERIN by denying his requests for time off and instead of decreasing his tirades towards GUERIN, increased them, again using the "f" word and stating that he didn't care if GUERIN died on the job.  GUERIN'S co-workers also asked CARTER for time off for GUERIN which CARTER denied.

20.    On June 21, 2006 CARTER called GUERIN and went into an hour long tirade during which he frenetically yelled at GUERIN for no reason.  During the conversation GUERIN suffered severe chest pains and distress and was severely concerned for his health.  Mindful of his physician's recent warnings, at the end of the conversation GUERIN gave his files to the Chief Concierge of the Napa Project, Linda Lundquist, ("Lundquist"), and resigned.

/ / /

/ / /

6

**FIRST CAUSE OF ACTION**

**EMPLOYMENT DISCRIMINATION AND HARASSMENT IN
VIOLATION OF THE AMERICANS WITH DISABILITIES
ACT OF 1990 42 U.S.C. §§ 12101 et seq.**

**AGAINST DEFENDANT SHELL VACATIONS**

21.     GUERIN repeats and re-alleges the allegations set forth in paragraphs 1 through 20, inclusive, of this Complaint.

22.     GUERIN was at all times material hereto an employee, as defined with 42 U.S.C. § 12111(4) and thus was covered by 42 U.S.C. § 12101 et seq., otherwise known as the "ADA". Said statute prohibits discrimination, harassment and retaliation in employment based on one's disability.

23.     Defendant SHELL VACATIONS is and was at all times material hereto an employer within the meaning of 42 U.S.C § 12111(5)(A).  As such, Defendant SHELL VACATIONS is barred from discriminating in any term, condition or privilege of employment, on the basis of an employee's disability and from harassing an employee on the same basis.

24.     Defendant SHELL VACATIONS discriminated against and harassed GUERIN on the basis of his disability in violation of 42 U.S.C. § 12101 et seq. when, Defendant SHELL VACATIONS, primarily CARTER, harassed GUERIN because of his disability by continuously making derogatory and degrading comments on the basis of his alcoholism and/or CARTER'S preference that he liked GUERIN better when GUERIN drank vs when GUERIN was sober.

25.     Defendant SHELL VACATIONS also discriminated and harassed GUERIN in violation of the ADA when CARTER denied GUERIN'S requests for time off even after GUERIN informed CARTER that he needed time off or he might relapse and possibly start drinking alcohol again and was also experiencing dangerously high blood pressure and chest pains, putting his health in danger.

26.     Defendant SHELL VACATIONS' discrimination and harassment towards GUERIN because of his disability resulted in GUERIN suffering from extremely high blood pressure, chest pains and other adverse physical side-effects.  When CARTER'S behavior was

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

combined with GUERIN'S health problems, GUERIN had no choice but to resign his employment with Defendant SHELL VACATIONS fearing that if he did not, he could possibly suffer a stroke, heart attack or other permanent damage to his physical and emotional health.

27.    As a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered, and will continue to suffer, substantial losses incurred in earnings and other employment benefits he would have received had Defendant SHELL VACATIONS not taken such adverse employment action against him.

28.    Further, and as a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered, and will continue to suffer, emotional distress damages including anxiety, humiliation, physical pain and other emotional distress in an amount according to proof.

29.    GUERIN is informed and believes that Defendant SHELL VACATIONS' actions, as set forth above, were motivated by animus towards GUERIN based on his disability.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN, and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant SHELL VACATIONS and with the intent to injure GUERIN.  GUERIN is therefore entitled to recover compensatory and punitive damages commensurate with Defendants' wealth, and as set forth under  42 U.S.C. § 1981(a)(2).

30.    As a result of Defendant SHELL VACATIONS' discriminatory acts as alleged herein, including violation of the ADA, GUERIN was damaged in an amount to be proven at trial, including, but not limited to, compensatory, general and punitive damages, attorney fees and costs, according to proof and as provided by 42 U.S.C. § 1981(a)(2) and 42 U.S.C. § 12133.

WHEREFORE, GUERIN requests relief as hereinafter provided.

/ / /

/ / /

## SECOND CAUSE OF ACTION

## EMPLOYMENT DISCRIMINATION BASED ON DISABILITY IN

8

**VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
GOVERNMENT CODE SECTIONS 12900(a)-12996**

**AGAINST DEFENDANT SHELL VACATIONS**

31.     GUERIN repeats and re-alleges the allegation set forth in paragraphs 1 through 30, inclusive, of this Complaint.

32.     Defendant SHELL VACATIONS has discriminated against GUERIN on the basis of his disability in violation of California Government Code sections 12900(a) through 12996 (otherwise known as the "FEHA") when, Defendant SHELL VACATIONS, primarily through its Regional Director of Marketing, CARTER, discriminated against GUERIN because of his disability by continuously making derogatory and degrading comments on the basis of his alcoholism and/or CARTER'S preference that he liked GUERIN better when he drank.  CARTER also discriminated against GUERIN by inappropriately measuring GUERIN'S performance on the basis of his being sober instead of on the merits of his performance.

33.     Defendant SHELL VACATIONS also discriminated against  GUERIN in violation of the FEHA when CARTER repeatedly denied GUERIN'S requests for time off even after GUERIN informed CARTER that he needed time off or he might relapse and possibly again start drinking alcohol and/or was experiencing dangerously high blood pressure and chest pains, putting his health in danger.

34.     CARTER'S discrimination of GUERIN was so prevalent in the workplace that on information and belief, other members of SHELL VACATIONS' management staff heard CARTER make the degrading and condescending comments to GUERIN and rejection of GUERIN'S requests for time off yet ignored it and did nothing to correct his behavior.  As such, SHELL VACATIONS ratified and condoned CARTER'S discrimination of GUERIN.

35.     Defendant SHELL VACATIONS' discrimination against GUERIN based on his disability resulted in GUERIN suffering from extremely high blood pressure, chest pains and other adverse physical and emotional side-effects.  When CARTER'S behavior was combined with GUERIN'S health problems, GUERIN had no choice but to resign his employment with Defendant SHELL VACATIONS or possibly suffer a stroke, heart attack or other permanent damage to his physical and emotional health.

9

36.     Defendant SHELL VACATIONS engaged in a pattern and practice of discriminating against and harassing employees, including GUERIN, on the basis of their protected categories, including disability, in violation of California Government Code sections 12900(a) through 12996 by engaging in the course of conduct set forth above.

37.     As a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered, and continues to suffer, substantial losses incurred in earnings and other employment benefits he would have received had Defendant SHELL VACATIONS not taken such adverse employment action against him.

38.     Further, as a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered, and continues to suffer, emotional distress damages including anxiety, humiliation, physical pain and other emotional distress in an amount according to proof.

39.     GUERIN is informed and believes that Defendant SHELL VACATIONS' actions as defined above were motivated by animus towards GUERIN based on his disability.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN, and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant SHELL VACATIONS and with the intent to injure GUERIN.  GUERIN is therefore entitled to recover compensatory and punitive damages commensurate with Defendants' wealth and as set forth under California Government Code sections 12900(a) – 12996 and California Civil Code section 3294.

40.     As a result of Defendant SHELL VACATIONS' discriminatory acts as alleged herein, including violation of said California Government Code, GUERIN was damaged in an amount to be proven at trial, including, but not limited to, compensatory, general and punitive damages, attorney fees and costs according to proof and as provided by California Government Code sections 12900(a) – 12996 and California Civil Code section 3294.

WHEREFORE, GUERIN requests relief as hereinafter provided.

### THIRD CAUSE OF ACTION

### HARASSMENT BASED ON DISABILITY IN

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

**VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT GOVERNMENT CODE SECTIONS 12900(a)-12996**

**AGAINST ALL DEFENDANTS**

41.    GUERIN repeats and re-alleges the allegation set forth in paragraphs 1 through 40, inclusive, of this Complaint.

42.    Defendants SHELL VACATIONS and CARTER harassed GUERIN on the basis of his disability in violation of California Government Code sections 12900(a) through 12996 (otherwise known as the "FEHA") when CARTER, as Defendant SHELL VACATIONS' Regional Director of Marketing and GUERIN'S boss, continuously made derogatory and degrading comments on the basis of GUERIN'S alcoholism and/or CARTER'S preference that he liked GUERIN better when he drank.   CARTER'S tirades were also fraught with swear words and derogatory comments and at times were yelled at GUERIN in a loud, angry voice.  CARTER made these comments to GUERIN himself and openly in front of other employees.  CARTER'S degrading comments belittled GUERIN in front of his staff, peers and co-workers.

43.    Defendants SHELL VACATIONS and CARTER also harassed GUERIN in violation of the FEHA when CARTER repeatedly denied GUERIN'S requests for time off even after GUERIN informed CARTER that he needed time off or he might relapse and possibly again start drinking alcohol and/or was experiencing dangerously high blood pressure and chest pains, putting his health in danger.  CARTER'S rejection of GUERIN'S requests were often loud, obnoxious and humiliating.  CARTER'S harassment of GUERIN was so prevalent in the workplace that on information and belief, other members of SHELL VACATIONS' management staff heard CARTER make the degrading and condescending comments to CARTER yet ignored it and did nothing to correct his behavior.  As such, SHELL VACATIONS ratified and condoned CARTER'S harassment of GUERIN.

44.    Defendants SHELL VACATIONS' and CARTER'S harassment of GUERIN based on his disability resulted in GUERIN suffering from extremely high blood pressure, chest pains and other adverse physical and emotional side-effects.  When CARTER'S behavior was combined with GUERIN'S health problems, GUERIN had no choice but to resign his employment with

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

Defendant SHELL VACATIONS or possibly suffer a stroke, heart attack or other permanent damage to his physical and emotional health.

45.     Defendants SHELL VACATIONS and CARTER engaged in a pattern and practice of harassing employees, including GUERIN, on the basis of their protected categories, including disability, in violation of California Government Code sections 12900(a) through 12996 by engaging in the course of conduct set forth above.

46.     As a proximate result of Defendants SHELL VACATIONS' and CARTER'S conduct, GUERIN has suffered, and continues to suffer, substantial losses incurred in earnings and other employment benefits he would have received had Defendants SHELL VACATIONS and CARTER not taken such adverse employment action against him.

47.     Further, as a proximate result of Defendants SHELL VACATIONS' and CARTER'S conduct, GUERIN has suffered, and continues to suffer, emotional distress damages including anxiety, humiliation, physical pain and other emotional distress in an amount according to proof.

48.     GUERIN is informed and believes that Defendant SHELL VACATIONS' and CARTER'S actions as defined above were motivated by animus towards GUERIN based on his disability.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN, and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant SHELL VACATIONS and with the intent to injure GUERIN. GUERIN is therefore entitled to recover compensatory and punitive damages commensurate with Defendants' wealth and as set forth under California Government Code sections 12900(a) – 12996 and California Civil Code section 3294.

49.     As a result of Defendant SHELL VACATIONS' and CARTER'S harassing acts as alleged herein, including violation of said California Government Code, GUERIN was damaged in an amount to be proven at trial, including, but not limited to, compensatory, general and punitive damages, attorney fees and costs according to proof and as provided by California Government Code sections 12900(a) – 12996 and California Civil Code section 3294.

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

WHEREFORE, GUERIN requests relief as hereinafter provided.

## FOURTH CAUSE OF ACTION

**FAILURE TO REASONABLY ACCOMMODATE DISABILITY INCLUDING FAILURE
TO ENGAGE IN THE INTERACTIVE PROCESS
IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
GOVERNMENT CODE SECTION 12940 *et seq***

### AGAINST DEFENDANT SHELL VACATIONS

50.     GUERIN repeats and re-alleges the allegations set forth in paragraphs 1 - 49,

inclusive, of this Complaint.

51.     At all times herein mentioned, California Government Code § 12900, et seq., was in

full force and effect and binding on Defendant SHELL VACATIONS.  Section 12940 requires

Defendant SHELL VACATIONS to reasonably accommodate an employee with a known physical

or mental disability and to meet and confer with the employee regarding those reasonable

accommodations.  Within the time provided by law, GUERIN filed a complaint with the DFEH in

full compliance with this section and received a right to sue letter.

52.     When his employment first commenced with SHELL in 2003, GUERIN had been

clean and sober for approximately four years.  CARTER was aware of this fact when he hired him.

Despite this, CARTER, especially after December 2005, made derogatory and degrading

comments to GUERIN about the fact that he was sober rather than drunk.  Of greater concern,

CARTER ignored GUERIN'S requests for time off from work for a three to four month period of

time despite GUERIN having informed CARTER that if he did not have time off that he may

return to consuming alcohol and no longer be sober and despite GUERIN informing CARTER

that he was experiencing high blood pressure and chest pains which in turn, caused him great

concern that he would eventually suffer a heart attack or stroke.  Further, CARTER himself

regularly consumed alcohol and used illegal substances, impliedly encouraging GUERIN and

13

peers to consume alcohol and use drugs both at work and during non-work hours.  The

consumption of alcohol and use of drugs was not only prevalent but encouraged in the workplace.

GUERIN and his peers on his behalf continued to request time off.  GUERIN did not acquiesce to

the use of drugs and alcohol.  Instead, GUERIN found the whole work environment so toxic that

he had no choice but to resign including on the recommendation of his physician.

53.    Despite CARTER'S actions and detrimental behavior towards GUERIN, and

SHELL VACATIONS' acceptance and ratification of CARTER'S actions, GUERIN could and

did perform the essential functions of his Director of Marketing position by preparing for the Napa

Project's opening in 2006 in an extremely short period of time   This included ensuring a

continuous flow of qualified potential buyers to the Napa Sales Center.  In order to achieve this

goal, GUERIN, among other actions, established contractual relationships with top activity

vendors in Napa Valley for promotional use; developed the Napa Dining Certificate program with

Napa and Sonoma county restaurants; recruited, trained and staffed the In-House and Community

Marketing Departments; developed marketing materials; oversaw all mini-vacation ("mini-vac")

tour traffic; and developed the Napa "Gold Card" merchant program.  GUERIN also negotiated

contracts with highly selective and prestigious locations including the Napa Wine Train Station,

Oakville Grocery, and the Napa Valley Conference and Visitor's Bureau.  GUERIN met or

exceeded all of the marketing goals set for the Napa Project.

54.   As a direct result of SHELL VACATIONS' willful, knowing and intentional

discrimination against GUERIN and failure to reasonably accommodate his disability, he has

sustained and continues to sustain substantial losses in earnings and other employment benefits.

55.   As a direct result of SHELL VACATIONS' willful, knowing and intentional

discrimination against GUERIN and failure to reasonably accommodate his disability, he has

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

56.  GUERIN has incurred and continues to incur legal expenses and attorney's fees. GUERIN is presently unaware of the precise amount of those expenses and fees and prays leave of court to amend this complaint when those amounts are more fully known.

57.  GUERIN is informed and believes that SHELL VACATIONS' actions as defined above were motivated by animus towards GUERIN based on his disability.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN, and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant and with the intent to injure GUERIN.  GUERIN is therefore entitled to recover compensatory and punitive damages commensurate with Defendant's wealth and as set forth under California Government Code sections 12900(a) – 12996 and California Civil Code section 3294.

WHEREFORE, GUERIN requests relief as hereinafter provided.

## **FIFTH CAUSE OF ACTION**

**FAILURE TO REASONABLY ACCOMMODATE A DISABILITY INCLUDING FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. §§ 12101 et seq.**

### **AGAINST DEFENDANT SHELL VACATIONS**

58.    GUERIN repeats and re-alleges the allegations set forth in paragraphs 1 through 57, inclusive, of this Complaint.

59.    GUERIN was at all times material hereto an employee, as defined with 42 U.S.C. § 12111(4) and thus covered by 42 U.S.C. § 12101 et seq., otherwise known as the "ADA".  Said statute requires that an employee's disability be reasonably accommodated in the workplace unless to do so would result in an undue hardship for the employer. This includes engaging in an

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

interactive process with an employee to determine what reasonable accommodations are required and can be provided by the employer to the employee in the workplace.

60.    Defendant SHELL VACATIONS is and was at all times material hereto an employer within the meaning of 42 U.S.C § 12111(5)(A).  As such, Defendant SHELL VACATIONS is required to reasonably accommodate an employee's disability unless to do so would have caused an undue hardship for it.

61.    Defendant SHELL VACATIONS failed to reasonably accommodate GUERIN'S disability when CARTER refused to allow GUERIN time off from work, especially between April and June of 2006, despite GUERIN'S own requests and those of his co-workers.    GUERIN informed CARTER that if he was not allowed the time off that he could relapse and start drinking again.  GUERIN also told CARTER that he had extremely high blood pressure, was experiencing severe chest pains and had been cautioned by his physician that he could suffer a heart attack or stroke.  Given CARTER'S comments that he preferred GUERIN when he was drinking or that he didn't like him when he was sober, GUERIN alleges that CARTER'S actions were intentional against GUERIN.

62.    Defendant SHELL VACATIONS' failure to reasonably accommodate GUERIN'S disability resulted in GUERIN suffering from dangerously high blood pressure, chest pains and other adverse physical side-effects.  When CARTER'S behavior was combined with GUERIN'S health problems, GUERIN had no choice but to resign his employment with Defendant SHELL VACATIONS fearing that if he did not, he could possibly suffer a stroke, heart attack, or other permanent damage to his physical and emotional health.

63.    As a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered, and will continue to suffer, substantial losses incurred in earnings and other employment benefits he would have received had Defendant SHELL VACATIONS not taken such adverse employment action against him.

64.    Further, and as a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered, and will continue to suffer, emotional distress damages including anxiety, humiliation, physical pain and other emotional distress in an amount according to proof.

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

65.    GUERIN is informed and believes that Defendant SHELL VACATIONS' actions, as set forth above, were motivated by animus towards GUERIN based on his disability.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN, and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant SHELL VACATIONS and with the intent to injure GUERIN.  GUERIN is therefore entitled to recover compensatory and punitive damages commensurate with Defendants' wealth, and as set forth under 42 U.S.C. § 1981(a)(2).

66.    As a result of Defendant SHELL VACATIONS' discriminatory acts as alleged herein, including violation of the ADA, GUERIN was damaged in an amount to be proven at trial, including, but not limited to, compensatory, general and punitive damages, attorney fees and costs, according to proof and as provided by 42 U.S.C. § 1981(a)(2) and 42 U.S.C. § 12133.

## SIXTH CAUSE OF ACTION

### HARASSMENT BASED ON SEXUAL ORIENTATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, GOVERNMENT CODE SECTIONS 12900(a)-12996

### AGAINST ALL DEFENDANTS

67.    GUERIN repeats and re-alleges the allegation set forth in paragraphs 1 through 66, inclusive, of this Complaint.

68.    Defendants CARTER and SHELL VACATIONS harassed GUERIN on the basis of his sexual orientation in violation of the FEHA, California Government Code sections 12900(a) through 12996, when, Defendant SHELL VACATIONS, primarily through its Director of Marketing, CARTER, harassed GUERIN because of his sexual orientation by continuously making derogatory and degrading comments on the basis of his sexual orientation and by constantly looking to and smirking at GUERIN when CARTER would call any other individual a "cock-sucker," a derogatory term regularly used by CARTER at work, especially when he was referring to someone he did not like.  The derogatory term was also regularly used by other employees in the workplace.

17

69.    CARTER'S harassment and Defendant SHELL VACATIONS' ratification of his harassment, combined with Defendants' other discriminatory conduct, resulted in GUERIN suffering from dangerously high blood pressure, chest pains and other adverse physical side-effects.  When CARTER'S behavior was combined with GUERIN'S health problems, GUERIN had no choice but to resign his employment with Defendant SHELL VACATIONS or possibly suffer a stroke, heart attack, or other permanent damage to his physical and emotional health.

70.    Defendant SHELL VACATIONS engaged in a pattern and practice of discriminating against and harassing employees, including GUERIN, on the basis of their protected categories, including their sexual orientation, in violation of California Government Code sections 12900(a) through 12996 by engaging in the course of conduct set forth above.

71.    As a proximate result of Defendants CARTER'S and SHELL VACATIONS' conduct, GUERIN has suffered, and continues to suffer, substantial losses incurred in earnings and other employment benefits he would have received had Defendant SHELL VACATIONS not taken such adverse employment action against him.

72.    Further, as a proximate result of Defendants' CARTER and SHELL VACATIONS conduct, GUERIN has suffered, and continues to suffer, emotional distress damages including anxiety, humiliation, physical pain and other emotional distress in an amount according to proof.

73.    GUERIN is informed and believes that Defendants CARTER'S and  SHELL VACATIONS' actions as defined above were motivated by animus towards GUERIN based on his sexual orientation.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN, and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees with the intent to injure GUERIN.  GUERIN is therefore entitled to recover compensatory and punitive damages commensurate with Defendants' wealth and as set forth under California Government Code sections 12900(a) – 12996 and California Civil Code section 3294.

74.    As a result of Defendants CARTER'S and SHELL VACATIONS' discriminatory and harassing acts as alleged herein, including violation of said California Government Code, GUERIN was damaged in an amount to be proven at trial, including, but not limited to,

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

compensatory, general and punitive damages, attorney fees and costs according to proof and as provided by California Government Code sections 12900(a) – 12996 and California Civil Code section 3294.

WHEREFORE, GUERIN requests relief as hereinafter provided.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE FEDERAL FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. §§ 2601-2636

### AGAINST DEFENDANT SHELL VACATIONS

75.    GUERIN repeats and re-alleges the allegation set forth in paragraphs 1 through 74, inclusive, of this Complaint.

76.    GUERIN was at all times material hereto an employee covered within the meaning of 29 U.S.C. § 2611(s).  As such, he is protected from being discriminated and retaliated against in employment based upon an employee's use of family and medical leave.

77.    Defendant SHELL VACATIONS was and is at all times material hereto an employer within the meaning of 29 U.S.C. § 2611(4) and as such, barred from discriminating in employment decisions on the basis of an employee's use of medical leave for a serious health condition.

78.    Defendant SHELL VACATIONS discriminated against and retaliated against GUERIN on the basis of his requested leave in violation of 29 U.S.C. §§ 2601-2636 when it denied GUERIN time off for his disability and serious medical conditions including when GUERIN informed CARTER that he was having chest pains and dangerously high blood pressure as a result of CARTER'S tirades, harassment and discrimination of him in the workplace. CARTER retaliated against GUERIN verbally when GUERIN asked for the time off by yelling at him and using, among other swear words, the "f" word.  Thereafter CARTER increased the frequency and duration of his many tirades towards GUERIN resulting in GUERIN having no choice but to resign his employment with Defendant SHELL VACATIONS or otherwise severely jeopardize his health.

19

79.     As a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered and continues to suffer substantial losses incurred in earnings and other employment benefits he would have received had Defendant SHELL VACATIONS not taken such adverse employment action against him.

80.     Further, as a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered and continues to suffer emotional distress damages including anxiety, humiliation, physical pain and other emotional distress in an amount according to proof.

81.     Defendant SHELL VACATIONS' actions as defined above were motivated by animus towards GUERIN based on his request for time off for his serious medical conditions and disability.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant and with the intent to injure GUERIN.  GUERIN is therefore entitled to recover punitive damages commensurate with Defendant SHELL VACATIONS' wealth and as set forth under 29 U.S.C. § 2617.

82.     As a result of Defendant SHELL VACATIONS' discriminatory and retaliatory conducts as alleged herein, including violation of said Federal Code, GUERIN was damaged in an amount to proven at trial, including, but not limited to, compensatory, general, and punitive damages, attorney fee's and costs according to proof and as provided by 29 U.S.C. §§ 2601-2654.

WHEREFORE, GUERIN requests relief as hereinafter provided.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA MOORE-BROWN-ROBERTI FAMILY RIGHTS ACT, GOVERNMENT CODE § 12945.2

### AGAINST DEFENDANT SHELL VACATIONS

83.     GUERIN repeats and re-alleges the allegation set forth in paragraphs 1 through 82 inclusive, of this Complaint.

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

84.    GUERIN was at all times material hereto an employee covered by Cal. Gov't Code § 12945.2 prohibiting discrimination and retaliation in employment based upon an employee's use of family and medical leave.

85.    Defendant SHELL VACATIONS was and is at all times material hereto an employer within the meaning of Cal. Gov't Code §12945.2 and as such, barred from discriminating in employment decisions on the basis of an employee's use of medical leave for his/her own serious medical conditions and retaliating against an employee for requesting said leave.

86.    Defendant SHELL VACATIONS discriminated against and retaliated against GUERIN on the basis of his requested leave in violation of Cal. Gov't Code § 12945.2 when it denied GUERIN time off for his disability and serious medical condition when GUERIN was experiencing chest pains and dangerously high blood pressure because of CARTER'S harassment and discrimination of him in the workplace.  CARTER and SHELL VACATIONS further retaliated against GUERIN by responding harshly to GUERIN when he requested time off and by increasing the frequency and duration of CARTER'S tirades against GUERIN.

87.    As a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered and continues to suffer substantial losses incurred in earnings and other employment benefits he would have received had Defendant SHELL VACATIONS not taken such adverse employment action against him.

88.    Further, as a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered and continues to suffer emotional distress damages including anxiety, humiliation, physical pain and other emotional distress in an amount according to proof.

89.    Defendant SHELL VACATIONS' actions as defined above were motivated by animus towards GUERIN based on his request for time off for his serious medical conditions and disability.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant and with the intent to injure GUERIN.  GUERIN is therefore

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

entitled to recover punitive damages commensurate with Defendant SHELL VACATIONS'

wealth and as set forth under Cal. Gov't Code § 12965.

90.    As a result of Defendant SHELL VACATIONS' discriminatory and retaliatory

conducts as alleged herein, including by violating said Federal Code, GUERIN was damaged in an

amount to proven at trial, including, but not limited to, compensatory, general, and punitive

damages, attorney fee's and costs according to proof and as provided by Cal. Gov't Code § 12965.

WHEREFORE, GUERIN requests relief as hereinafter provided.

## NINTH CAUSE OF ACTION

**WRONGFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY**

**AGAINST DEFENDANT SHELL VACATIONS**

91.    GUERIN repeats and re-alleges the allegations set forth in paragraphs 1 through 90

inclusive, of this Complaint.

92.    Defendant SHELL VACATIONS, and each of the other Defendants, violated

Federal and California public policy as embodied in the ADA, the FEHA, the CFRA and the

FMLA when it allowed, ratified and endorsed CARTER in creating an abusive, intolerable and

hostile work environment for GUERIN based on his disability, alcoholism, and request for time

off after working 90 days straight both as a reasonable accommodation for his disability and

because he was beginning to suffer serious medical conditions of dangerously high blood pressure

and reoccurring chest pains.  GUERIN had been advised by his physician that the abusive and

harassing environment in conjunction with his serious medical conditions could lead to his having

a heart attack or stroke.  Defendant SHELL VACATIONS created a hostile work environment for

GUERIN when it knew yet allowed CARTER to continuously go into abusive and unwarranted

tirades against GUERIN including when he made derogatory, harassing and demeaning statements

based upon GUERIN'S disability and sexual orientation.

93.    Further, Defendant SHELL VACATIONS, and each of the other Defendants, by the

actions set forth above, wrongfully retaliated against GUERIN for asserting personal statutory

rights designed to protect workers and thereby wrongfully undermined the public policy advanced

by the social legislation embodied in California Government Code sections 12900(a) through

22

12996 and the ADA and the FMLA all on the basis of his disability and request for time off for his serious medical conditions when CARTER was allowed to continue and increase his many unwarranted and foul mouthed tirades against GUERIN.

94.    Defendant SHELL VACATIONS', primarily through its Director of Marketing, CARTER'S, actions were so intolerable, offensive, demeaning and physically and emotionally damaging to GUERIN that neither he, nor any reasonable person, had any alternative but to resign his employment.  Indeed, GUERIN'S co-workers had also requested that CARTER give GUERIN time off, again to no avail.  Further, on information and belief, Defendant's Human Resources Manager, Ignacio had received other complaints about CARTER'S harassment of employees and had herself witnessed CARTER'S harassment of GUERIN and other employees yet took no pro-active or corrective action against CARTER for the protection of any employees.  Instead, Ignacio turned her head and looked the other way.  As such, GUERIN felt that he had no recourse internally at SHELL VACATIONS and after receiving counsel and advice from his physician, headed the warnings that he was seriously endangering his health and resigned immediately after having been subjected to one of CARTER'S hour long tirades.

95.    As a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered, and will continue to suffer, substantial losses incurred in earnings and other employment benefits he would have received had Defendant SHELL VACATIONS not taken such adverse employment action against him.

96.    Further, and as a proximate result of Defendant SHELL VACATIONS' conduct, GUERIN has suffered, and will continue to suffer, emotional distress damages including anxiety, humiliation, physical pain and other emotional distress in an amount according to proof.

97.    GUERIN is informed and believes that Defendant SHELL VACATIONS' actions, as set forth above, were motivated by animus towards GUERIN based on his disability, request for time off due to his serious medical condition and sexual orientation.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN, and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant SHELL

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

VACATIONS and with the intent to injure GUERIN.  GUERIN is therefore entitled to recover compensatory and punitive damages commensurate with Defendant's wealth, and as set forth under California Civil Code section 3294.

98.    As a result of Defendant SHELL VACATIONS' discriminatory acts as alleged herein, including violation of said California Government Code, and the ADA and FMLA, GUERIN was damaged in an amount to be proven at trial, including, but not limited to, compensatory, general and punitive damages, according to proof and as provided by the respective state and federal statutes.

WHEREFORE, GUERIN requests relief as hereinafter provided.

### TENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### AGAINST ALL DEFENDANTS

99.    GUERIN repeats and re-alleges the allegations set forth in paragraphs 1 through 98, inclusive, of this Complaint.

100.    The conduct set forth above was extreme and outrageous and an abuse of the authority and position of DEFENDANTS, and each of them.  Said conduct was intended to cause severe emotional distress or was done in conscious disregard of the probability of causing such distress.  In particular, DEFENDANTS engaged in an intentional and hostile course of conduct creating such a hostile and abusive environment that GUERIN had no choice but to resign his employment with Defendant SHELL VACATIONS.  This conduct included CARTER increasingly yelling and going into almost daily tirades against GUERIN for no reason, during which he repeatedly swore, used the "f" word and demeaned GUERIN for his efforts.  Additionally, CARTER increasingly made derogatory comments to GUERIN about his sexual orientation and disability, stating that he liked GUERIN better when he was drunk and not sober.  Finally, CARTER intentionally and without hesitation denied GUERIN any time off for at least 90 days straight despite GUERIN informing CARTER that he needed to take time off or he would start drinking again and/or informed CARTER that his blood pressure had risen to a dangerous level and he was experiencing chest pains.

24

101.    As a proximate result of DEFENDANTS' conduct, GUERIN has suffered, and will continue to suffer, substantial losses incurred in earnings and other employment benefits he would have received had Defendants SHELL VACATIONS, and CARTER not taken such adverse employment action against him.

102.    Further, and as a proximate result of DEFENDANTS' conduct, GUERIN has suffered, and will continue to suffer, severe emotional distress damages including anxiety, humiliation, physical pain and other emotional distress in an amount according to proof.

103.    GUERIN is informed and believes that DEFENDANTS' actions, as set forth above, were motivated by animus towards GUERIN based on his disability, need for family leave and sexual orientation.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN, and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant SHELL VACATIONS and with the intent to injure GUERIN. GUERIN is therefore entitled to recover punitive damages commensurate with DEFENDANTS' wealth, and as set forth under California Civil Code section 3294.

104.    As a result of DEFENDANTS' discriminatory, harassing and retaliatory acts as alleged herein, including violation of specified state and federal employment statutory provisions prohibiting discrimination, harassment and retaliation, GUERIN was damaged in an amount to be proven at trial, including, but not limited to, compensatory, general and punitive damages, according to proof.

WHEREFORE, GUERIN requests relief as hereinafter provided.

## ELEVENTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### AGAINST ALL DEFENDANTS

105.    GUERIN repeats and re-alleges the allegations set forth in paragraphs 1 -104, inclusive, of this Complaint.

106.    Negligent Infliction of Emotional Distress is severe emotional distress that is proximately caused by a Defendant's negligent conduct or willful violation of a statutory standard. California law mandates that an employer take the necessary action that is reasonably calculated to end illegal and inappropriate conduct creating a harmful work environment for an employee. An employer is thereby liable for the injury caused to an employee by its failure to eradicate the harmful conduct of another of its employees that is causing another foreseeable harm and thus, ratifying the conduct.

107.    DEFENDANTS' conduct, as set forth above, caused GUERIN severe emotional distress when it ignored its duty to stop the harmful and harassing conduct towards GUERIN, primarily by CARTER.  The employer knew of the unsafe and harmful conduct and the harm it was causing GUERIN, including the large consumption of alcohol and drugs in the workplace, CARTER'S harassment of GUERIN because of his disability, sexual orientation and CARTER'S express denial of GUERIN'S request for time off despite GUERIN'S informing CARTER that he was suffering from serious physical conditions and that if he did not have time off he may begin consuming alcoholic beverages instead of remaining sober.

108.    DEFENDANTS further caused GUERIN emotional distress when Defendant SHELL VACATIONS ignored its duty to stop the harmful and harassing conduct towards him and instead, expressly ratified CARTER'S conduct because it knew of CARTER'S behavior towards GUERIN and other employees yet failed to correct it, discipline CARTER or terminate his employment.

109.    As a direct result of DEFENDANTS' negligent conduct against GUERIN, he has sustained and continues to sustain substantial losses in earnings and other employment benefits.

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

110.    As a direct result of DEFENDANTS' negligent conduct against GUERIN, he has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

111.  GUERIN is informed and believes that DEFENDANTS' actions as defined above were motivated by animus towards GUERIN based on his disability, sexual orientation and request for time off for his serious medical conditions.  Said acts were committed maliciously, fraudulently and oppressively, with the wrongful intention of injuring GUERIN, and with an improper and evil motive amounting to malice.  Said acts were carried out by managerial employees acting within the course and scope of their employment with Defendant SHELL VACATIONS and with the intent to injure GUERIN.  GUERIN is therefore entitled to recover compensatory and punitive damages commensurate with Defendant SHELL VACATIONS' AND CARTER'S wealth and as set forth under California Government Code sections 12900(a) – 12996 and California Civil Code section 3294.

WHEREFORE, GUERIN requests relief as hereinafter provided.

### PRAYER FOR RELIEF

WHEREFORE, GUERIN prays judgment against Defendants as follows:

1.    For all actual, consequential, and incidental losses, including, but not limited to, the loss of income and benefits, including back pay and front pay, according to proof, together with prejudgment interest, for all causes of action.

2.    For general, compensatory, and non-economic damages for all causes of action;

3.    For exemplary and punitive damages for all causes of action;

4.    For costs of suit herein including reasonable attorney's fees;

5.    For prejudgment interest at the prevailing legal rate; and

6.    For such other and further relief as the Court may deem proper.

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA

1    DATED:  November 20, 2007

2                                    HUBER LAW FIRM

3

4                        By:    _____
                                      BETH A. HUBER
5                               Attorneys for Plaintiff JAMES L. GUERIN

6

7

8                              **JURY DEMAND**

9        Plaintiff demands trial by jury in this action.

10

11   DATED:  November 20, 2007

12                                   HUBER LAW FIRM

13

14                       By:    _____
                                      BETH A. HUBER
15                              Attorneys for Plaintiff JAMES L. GUERIN

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES FOR EMPLOYMENT DISCRIMINATION IN VIOLATION OF THE ADA